[J-103-2018] [MO: Dougherty, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 11 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 1490 MDA 2016, dated |
| | : | July 19, 2017, Reconsideration |
| v. | : | Denied September 26, 2017, |
| | : | Reversing the Order of the Court of |
| | : | Common Pleas of Lycoming County, |
| THOMAS S. BELL, | : | Criminal Division, at No. CP-41-CR- |
| | : | 0001098-2015, dated August 19, 2016 |
| Appellant | : | and Remanding for Sentencing. |
| | : | |
| | : | SUBMITTED: November 30, 2018 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                          **DECIDED: July 17, 2019**

In *Missouri v. McNeely*, 569 U.S. 141 (2013), and *Birchfield v. North Dakota*, __ U.S. __, 136 S.Ct. 2160 (2016), the Supreme Court of the United States altered the Fourth Amendment paradigm in DUI investigations. The conclusions that the Court reached, particularly in *Birchfield*, have a substantial ripple effect upon numerous other questions of constitutional dimension.

Although *Birchfield* answers quite clearly the question upon which the Court granted *certiorari*, the Court's discussion regarding the concept of "implied consent" is puzzling. The *Birchfield* Court's opacity on this point prompted substantial disagreement among the members of this Court in *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017), and we at that time were unable to reach a consensus regarding the impact of the *Birchfield* decision upon Pennsylvania law. This Court has resolved certain unanswered questions relating to matters such as the legality of a criminal sentence that implicates

*Birchfield.  See Commonwealth v. Monarch*, 200 A.3d 51 (Pa. 2019).  However, since *Myers*, this Court has not had an opportunity to address several other legal questions that remain unresolved in *Birchfield*'s wake.  These questions relate to the voluntariness of consent, driver's license suspension, and admissibility of evidence.  In this case, we address the "evidentiary consequence," *Birchfield*, 136 S.Ct. at 2185, set forth in 75 Pa.C.S. § 1547(e), which allows the Commonwealth to introduce evidence at trial of a motorist's refusal to consent to a warrantless blood draw, thus suggesting consciousness of guilt.

It is evident to me that all of these unanswered questions, including the question at bar, have the same answer.  The answer is that a blood test, unlike a breath test, is an intrusive manner of Fourth Amendment search, for which there is no readily available exception to the Fourth Amendment's warrant requirement.  As such, under established constitutional doctrine, an individual has a right to refuse such a warrantless search, and the exercise of that right may not be penalized, coerced, burdened, manipulated, or involuntarily bargained away by the State.  The Fourth Amendment need not be strained to reach a contrary conclusion, because the evidence that is sought remains available, and the legislative measures designed to secure that evidence all remain permissible.  Police officers merely must obtain search warrants for blood tests, or resort to the exigent circumstances exception when they cannot.  Because, in this case, the failure to obtain a search warrant rendered the blood test unconstitutional, Thomas Bell had a constitutional right to refuse to consent to that search, and the use of his refusal as evidence of his guilt placed an impermissible burden upon the exercise of Bell's Fourth Amendment rights.

My reasoning follows.

## I. Constitutional Right to Refuse Consent to an Invalid Search

The instant case implicates constitutional issues that were not before the Court in *McNeely* or *Birchfield*. These decisions nonetheless impact the question presented here, so we must survey the legal landscape as it now stands in light of the Court's analyses in these cases. When a motorist is suspected of DUI, testing of the motorist's blood alcohol concentration ("BAC") is the primary means by which police officers obtain evidence of the motorist's crime. Such testing typically requires a sample of the motorist's breath or blood. Breath tests and blood tests both indisputably constitute searches under the Fourth Amendment. *See Birchfield*, 136 S.Ct. at 2173 (citing *Skinner v. Ry. Labor Execs.' Ass'n.*, 489 U.S. 602, 616-17 (1989); *Schmerber v. California*, 384 U.S. 757, 767-68 (1966)).

Even in the absence of a search warrant, such tests once were viewed as constitutional pursuant to *Schmerber*, wherein the Court held that a warrantless blood test was permissible because, in light of the constant dissipation of alcohol from the bloodstream, the officer who arrested a motorist suspected of DUI "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber*, 384 U.S. at 770 (citation and quotation marks omitted). Generalized acceptance of this theory was particularly understandable following the Court's *dictum* in *South Dakota v. Neville*, 459 U.S. 553 (1983), wherein the Court—addressing whether evidence of a motorist's refusal to comply is "testimonial" for purposes of the Fifth Amendment right against self-incrimination—stated broadly that "*Schmerber* . . . clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test." *Neville*, 459 U.S. at 559.

However, in *McNeely*, the Court clarified *Schmerber*, holding that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 569 U.S. at 165. Crucial to the *McNeely* Court's reasoning were the "advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications" such as the remote communication with a magistrate by telephone, radio, e-mail, and video-conference, as well as "other ways to streamline the warrant process, such as by using standard-form warrant applications for drunk-driving investigations." *McNeely*, 569 U.S. at 154-55. In other words, when *Schmerber* was decided, time constraints created a greater need for an exception from the warrant requirement than exists today, with the advent of technology that makes the acquisition of a search warrant easier and more expeditious than ever before.

Following *McNeely*, although the dissipation of BAC evidence "may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically." *Id.* at 156.[1] Rather, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* A question arose: whether warrantless BAC testing may be justified categorically upon the basis of a different exception to the warrant requirement, such as consent or the search-incident-to-arrest doctrine? Enter *Birchfield*.

---

[1] As discussed further below, *infra* n.9, a plurality of the Supreme Court of the United States now has concluded that, in the particular circumstance in which a motorist suspected of DUI is unconscious, the exigent circumstances exception to the warrant requirement generally will apply. *Mitchell v. Wisconsin*, __ U.S. __, 139 S.Ct. 2525 (2019) (plurality). This ruling, however, does not alter *McNeely*'s application to conscious motorists, nor does it provide any clarity with regard to the question presently at bar. Further, because we do not here consider a blood draw conducted upon an unconscious motorist, *Mitchell* does not inform the analysis with regard to the threshold question of whether the search compelled in this case was permissible under the Fourth Amendment or Article I, Section 8 of the Pennsylvania Constitution.

The *Birchfield* decision began with a discussion of the history, purpose, and operation of "implied consent" laws, which are designed to encourage a motorist's cooperation with BAC testing. "Because the cooperation of the test subject is necessary when a breath test is administered and highly preferable when a blood sample is taken, the enactment of laws defining intoxication based on BAC made it necessary for States to find a way of securing such cooperation. So-called 'implied consent' laws were enacted to achieve this result." *Birchfield*, 136 S.Ct. at 2168-69.

Although the typical consequences of refusal include suspension or revocation of a motorist's driver's license and the admission of evidence of the motorist's refusal in a subsequent prosecution, the Court observed that "some States have begun to enact laws making it a crime to refuse to undergo testing." *Id.* at 2169. Importantly, it was the question of the constitutionality of *criminal punishment* for refusal to submit to a *warrantless* BAC test—and not the other consequences imposed under implied consent schemes—upon which the Court granted *certiorari*. *See id.* at 2172 ("We granted *certiorari* . . . in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream.").

After observing the differences between the facts of the three petitioners' cases—Birchfield refused a blood test and was convicted of a crime; Bernard refused a breath test and was convicted of a crime; and Beylund submitted to a blood test and his driver's license was suspended based upon his BAC—the Court articulated the framework for resolving the constitutional question at issue. The Court premised its *ratio decidendi* upon the following inquiry:

> Despite these differences, success for all three petitioners depends on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant authorizing such testing is issued by a magistrate. If, on the other hand,

> such warrantless searches comport with the Fourth Amendment, it follows that a State may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant.

*Id.* "And by the same token," the Court added, "if such warrantless searches are constitutional, there is no obstacle under federal law to the admission of the results that they yield in either a criminal prosecution or a civil or administrative proceeding." *Id.* at 2173.

Under *Birchfield*, the validity of the search is dispositive of the lawfulness of the penalty. Accordingly, the Court began its analysis "by considering whether the searches demanded in these cases were consistent with the Fourth Amendment." *Id.* The Court spent the vast majority of its analysis upon the search-incident-to-arrest doctrine as an exception to the Fourth Amendment's warrant requirement, ultimately arriving at the critical distinction for which the *Birchfield* decision is now known: "Because breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, . . . a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." *Id.* at 2185. Because a breath test falls within the search-incident-to-arrest doctrine, it is a *valid search*, and a state "may criminalize the refusal to comply . . . just as a State may make it a crime for a person to obstruct the execution of a valid search warrant." *Id.* at 2172. Thus, Bernard lawfully could be punished for his refusal to comply with a warrantless breath test. "That test *was* a permissible search incident to Bernard's arrest for drunk driving . . . . Accordingly, the Fourth Amendment did not require officers to obtain a warrant prior to demanding the test, and Bernard had no right to refuse it." *Id.* at 2186 (emphasis in original).

"Blood tests are a different matter." *Id.* at 2178. The Court reasoned that, due to the necessity of piercing the skin to extract a vital bodily fluid, due to the increased expectation of privacy in blood as compared to breath, and due to the quantum of

information that may be gleaned from a blood sample beyond a mere BAC reading, a blood test is qualitatively different from a breath test. *Id.* "Blood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." *Id.* at 2184. The Court added that the government had "offered no satisfactory justification for demanding the more intrusive alternative without a warrant." *Id.* Thus, the Court held that blood tests do not qualify for categorical exception from the warrant requirement under the search-incident-to-arrest doctrine.

After concluding that blood tests are too invasive to fall within the search-incident-to-arrest exception to the warrant requirement, the *Birchfield* Court turned to the viability of "implied consent" laws as an alternative justification for warrantless blood draws. The Court's comparatively terse rejection of the proposition has engendered substantial confusion. The Court reasoned:

> Having concluded that the search incident to arrest doctrine does not justify the warrantless taking of a blood sample, we must address respondents' alternative argument that such tests are justified based on the driver's legally implied consent to submit to them. It is well established that a search is reasonable when the subject consents, *e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and that sometimes consent to a search need not be express but may be fairly inferred from context, *cf. Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 1415-16 (2013); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978). Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. *See, e.g.*, *McNeely*, 133 S.Ct. 1552, 1565-66 (plurality opinion); *South Dakota v. Neville*, 459 U.S. 553, 560 (1983). Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Id.* at 2185 (citations modified). Applying the Fourth Amendment's governing standard of "reasonableness," the Court held "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

An important observation must be made at this juncture. Post-*Birchfield*, this Court and many others have considered arguments suggesting that, pursuant to this passage of *Birchfield*, warrantless blood tests conducted under implied consent schemes do not violate the Fourth Amendment, so long as refusal does not trigger the imposition of criminal punishment. Such is the view of the Supreme Court of Vermont, upon which today's Majority relies. *See* Majority Opinion at 21 (quoting *State v. Rajda*, 196 A.3d 1108, 1121 (Vt. 2018) ("In *Birchfield*, the U.S. Supreme Court has ruled, with respect to the more invasive blood test, that only criminalizing the revocation of implied consent crosses the line in terms of impermissibly burdening the Fourth Amendment.")); *see also Fitzgerald v. People*, 394 P.3d 671, 676 (Colo. 2017) ("[T]he Supreme Court has all but said that anything short of criminalizing refusal does not impermissibly burden or penalize a defendant's Fourth Amendment right to be free from an unreasonable warrantless search.").

Accepting this position requires us to foist upon *Birchfield* an untenable reading of the Court's reasoning. Recall the *Birchfield* Court's heuristic for resolving the constitutional question upon which it granted *certiorari*: "that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test" without a warrant, *unless* "such warrantless searches comport with the Fourth Amendment," in which case, "a State may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant." *Birchfield*, 136 S.Ct. at 2172. That is, the *validity of the search* is dispositive of the *lawfulness of the penalty* for refusal to

cooperate—not the other way around. A State may penalize the obstruction of a valid search, but it may not penalize an individual for refusing to acquiesce to an unconstitutional search or seizure.

If we understand *Birchfield* as holding that warrantless blood draws "comport with the Fourth Amendment," *id.*, provided that no criminal penalties attend refusal, then *Birchfield* cannot be reconciled with itself. If such a search is valid, then its obstruction may be penalized, "just as a State may make it a crime for a person to obstruct the execution of a valid search warrant." *Id.* But those penalties, under this constricted understanding of *Birchfield*'s holding, would render the search invalid. Strike out the penalties, and the search again would be valid. But as a valid search, it would be permissible to penalize its obstruction. This circular exercise continues *ad infinitum*, rendering *Birchfield* incoherent by its own terms.[2]

Avoiding the *Birchfield* paradox requires only that we recognize what is implicit in *Birchfield*'s reasoning: absent exigent circumstances, a warrantless blood test generally does not "comport with the Fourth Amendment." *Id.* A breath test is categorically valid without a warrant, but a blood test is not. This was the "compromise" that the Court reached. *See id.* at 2198 (Thomas, J., dissenting). The Court's thoroughly reasoned distinctions between breath and blood were all in service of that compromise. At least

---

[2] With respect to this observation, the Majority asserts that I have "manufacture[d] an illusory circularity problem where one does not exist." Majority Opinion at 22 n.14. The problem is not of my making. Quite simply, the *Birchfield* Court determined that criminal penalties lawfully may attach to the refusal to submit to a valid search. *See Birchfield*, 136 S.Ct. at 2172. The Court then concluded (within its discussion of the government's alternative "implied consent" argument) that criminal penalties cannot attach to the refusal to submit to a warrantless blood test. *Id.* at 2186. It follows that a warrantless blood test cannot be deemed categorically valid because, otherwise, the criminal penalties that the Court forbade would be permissible by its own rationale. What the Majority characterizes as "an illusory circularity problem where one does not exist," I would call *Birchfield*'s *ratio decidendi*.

some consequences of that compromise are straightforward. Upon lawful arrest of a DUI suspect, police officers may demand submission to a breath test—without a search warrant—in every case. *Birchfield* holds that this manner of search "in most cases amply serve[s] law enforcement interests." *Id.* at 2185. Because a breath test is a valid search, refusal to submit may be criminally punished. *Id.* at 2186. As for blood testing, we are left with a warrantless Fourth Amendment search wanting for an exception.

Although statutorily "implied consent" may appear facially to be a viable path to a warrant exception, for all the reasons discussed in our plurality opinion in *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017) (plurality), and others, this theory is incompatible with the Fourth Amendment. It bears mention that the Supreme Court of the United States has never held that a motorist may be subjected to a warrantless blood draw solely upon the basis that he or she "consented" to such an intrusion by obtaining a driver's license or by driving on public roads. *Birchfield* certainly does not stand for such a proposition. Indeed, the suggestion that the mere omission of criminal penalties renders a blood draw constitutional under "implied consent" results in the aforementioned paradox—that obstruction of a valid search may be penalized but imposing those penalties renders the search invalid.

*Birchfield* further undermines the "implied consent" suggestion. In discussing the different benefits that each manner of testing may provide, the Court noted that, unlike a breath test, a blood test can detect substances other than alcohol that may impair the motorist's ability to operate a vehicle safely. The Court reasoned that "[n]othing prevents the police from *seeking a warrant for a blood test* when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not." *Birchfield*, 136 S.Ct. at 2184 (emphasis added). Similarly, the Court noted that, unlike a breath test, a blood test may be

administered to a person who is unconscious. The Court stated that it had "no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police *may apply for a warrant* if need be." *Id.* at 2185 (emphasis added). Finally, a blood test may be necessary where a motorist foils a breath test by failing to provide a sufficient sample. The Court noted that such conduct may constitute a refusal to comply with breath testing and may be prosecuted as such. "And again, a warrant for a blood test may be sought." *Id.*[3] The Court did not suggest at any point that warrantless blood testing may be permissible upon the basis of a statutory implied consent provision alone. No decision of the High Court ever has so held.

It is incongruous to conclude that a blood test is too intrusive, and compromises privacy interests too much, to qualify for categorical treatment under the search-incident-to-arrest exception to the warrant requirement, yet may be given categorical treatment

---

[3] The Majority characterizes *Birchfield*'s discussions of the distinctions between breath testing and blood testing as "*dicta*" that I have found "useful." Majority Opinion at 22 n.14. I must respectfully disagree with this characterization. *Dictum* is a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Obiter dictum*, BLACK'S LAW DICTIONARY (10th ed. 2014). The distinctions between breath testing and blood testing, and the relative benefits of each manner of search, were directed toward the Court's dispositive conclusions that breath tests "in most cases amply serve law enforcement interests," *Birchfield*, 136 S.Ct. at 2185; that the necessity of a blood draw "must be judged in light of the availability of the less invasive alternative of a breath test," *id.* at 2184; that the government had "offered no satisfactory justification for demanding the more intrusive alternative without a warrant," *id.*; and, ultimately, the Court's conclusion that blood tests do not qualify for categorical exception from the warrant requirement under the search-incident-to-arrest doctrine. *Id.* at 2185. Indeed, the drawing of a constitutionally significant distinction between breath testing and blood testing was the very core of *Birchfield*'s holding. If these passages are "*dicta*," it is difficult to discern what is not.

By contrast, and by way of illustration, any suggestion in *Birchfield* regarding the continued constitutional validity of "civil penalties and evidentiary consequences" imposed upon motorists for refusal to consent to a warrantless blood test—issues that were not before the Court and not essential to its holding—is more properly characterized as *dictum*. *Id.*

under the consent exception. Indeed, comparing the search-incident-to-arrest doctrine to the exception for exigent circumstances, the *Birchfield* Court noted that the exigent circumstances exception "has always been understood to involve an evaluation of the particular facts of each case." *Id.* at 2183. By contrast, the Court noted, under the search-incident-to-arrest exception, the "authority is categorical." *Id.* Like the exigent circumstances exception, the consent exception always has been understood to require an evaluation of the particular facts of each case, under the totality of the circumstances. *See Schneckloth*, 412 U.S. at 248-49 ("Voluntariness is a question of fact to be determined from all the circumstances."); *Birchfield*, 136 S.Ct. at 2186 ("voluntariness of consent to a search must be 'determined from the totality of all the circumstances'") (quoting *Schneckloth*, 412 U.S. at 227). It would seem that insulating the more intrusive blood test from such categorical treatment was the very purpose of the *Birchfield* Court's distinction between breath testing and blood testing and its decision to exclude blood testing from the search-incident-to-arrest doctrine. If every motorist categorically may be deemed to have consented to this more intrusive form of search, then the Court's distinction serves little purpose indeed.

One might construe statutory "implied consent" to require that a motorist's Fourth Amendment rights be curtailed as a condition of exercising the privilege of driving, or that the decision to exercise that privilege establishes a motorist's consent to blood testing. *See Myers*, 164 A.3d at 1182 (Saylor, C.J., concurring) ("[I]t seems to me that the voluntary act of operating a vehicle suffices to establish the initial consent to chemical testing.") However, this understanding of "implied consent" is in tension with the unconstitutional conditions doctrine. As the Supreme Court of the United States recently explained, the unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them

up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). "[T]he government may not deny a benefit to a person because he exercises a constitutional right." *Id.* (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983)). The Supreme Court has applied the doctrine "in a variety of contexts" and to constitutional rights as varied as land ownership, freedom of speech, and the right to travel. *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593 (1972) (speech); *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) (travel)).

Under the unconstitutional conditions doctrine, it is immaterial that driving an automobile is a privilege rather than a fundamental right. *See* Majority Opinion at 12-13 (citing *PennDOT v. Scott*, 684 A.2d 539, 544 (Pa. 1996)). As the Supreme Court of the United States has explained:

> Virtually all of our unconstitutional conditions cases involve a gratuitous governmental benefit of some kind. *See, e.g., Regan*, 461 U.S. 540 (tax benefits); *Mem'l Hosp.*, 415 U.S. 250 (healthcare); *Perry*, 408 U.S. 593 (public employment); *United States v. Butler*, 297 U.S. 1, 71 (1936) (crop payments); *Frost & Frost Trucking Co. v. R.R. Comm'n of Cal.*, 271 U.S. 583 (1926) (business license). Yet we have repeatedly rejected the argument that if the government need not confer a benefit at all, it can withhold the benefit because someone refuses to give up constitutional rights. *E.g., United States v. Am. Library Assn., Inc.*, 539 U.S. 194, 210 (2003) ("[T]he government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech *even if he has no entitlement to that benefit*" (emphasis added and internal quotation marks omitted)); *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952) (explaining in unconstitutional conditions case that to focus on "the facile generalization that there is no constitutionally protected right to public employment is to obscure the issue").

*Koontz*, 570 U.S. at 608 (citations modified). Under this doctrine, and notwithstanding that driving an automobile is a privilege or a "gratuitous government benefit," *id.*, the government cannot condition the exercise of this privilege upon motorists' relinquishment of their Fourth Amendment rights. The High Court in *Frost* long ago reasoned:

It would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold.  It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose.  But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.  If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all.  It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*Frost*, 271 U.S. at 593-94.

For all these reasons, implied consent does not pass muster as a basis for dispensing with the warrant requirement for blood tests, or for demanding that a motorist relinquish his or her Fourth Amendment rights upon occupying the driver's seat of an automobile.[4]  Absent exigent circumstances, we are left with actual, voluntary consent as

---

[4]     Bell placed the unconstitutional conditions doctrine at issue from the inception of this case.  Although the Majority quotes from Bell's pre-trial motion to dismiss, it excises Bell's citation to the unconstitutional conditions doctrine.  *Compare* Majority Opinion at 11 (quoting Motion to Dismiss, 3/8/2016, at 2) ("Pennsylvania's Implied Consent Law violates Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution[,]") *with* Motion to Dismiss, 3/8/2016, at 2 ("Pennsylvania's Implied Consent Law violates Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution *under the Unconstitutional Conditions Doctrine*.") (emphasis added).  Regardless, I do not discuss the doctrine as a separate issue or independent basis for granting relief, but, rather, merely for the purpose of articulating fully my conclusion on the threshold issue that underlies the question at bar:   that there is no categorical basis upon which to dispense with the warrant requirement for blood testing and, thus, no valid Fourth Amendment search as to which a motorist's cooperation lawfully may be compelled.

The Majority opines that the unconstitutional conditions doctrine is "inapplicable" because, due to the statutory right to refuse chemical testing under 75 Pa.C.S. § 1547(b), the "implied consent law does not condition the privilege of driving upon a motorist's submission to future warrantless blood testing."  Majority Opinion at 20 n.12.  To the contrary, this is precisely what the implied consent law does.  The statute indeed provides a right of refusal, which allows a motorist to avoid the circumstance in which a blood

the only possible justification for the failure to obtain a search warrant prior to conducting a blood draw. This is precisely the inquiry that *Birchfield* left open when remanding petitioner Beylund's case:

> The North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be 'determined from the totality of all the circumstances,' *Schneckloth*, 412 U.S. at 227, we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory.

*Birchfield*, 136 S.Ct. at 2186 (citation modified).

One observation is obvious: an individual has a constitutional right to refuse to consent to a search that is not authorized by a warrant or a valid exception to the warrant requirement. Although "the subject's knowledge of a right to refuse" is not "a prerequisite to establishing a voluntary consent," *Schneckloth*, 412 U.S. at 249, it is nonetheless inherent in the request for consent that the individual retains a right to decline. For this reason, the Superior Court in the instant case patently erred in concluding that Bell "had no constitutional right to refuse a [warrantless] blood test upon his lawful arrest for DUI." *Commonwealth v. Bell*, 167 A.3d 744, 749 (Pa. Super. 2017).

For this conclusion, the Superior Court relied principally upon a statement to that effect in *Neville*. *See Neville*, 459 U.S. at 560 n.10 ("[A] person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test."). However, as noted above, *Neville* addressed only whether evidence of refusal is "testimonial" for purposes

---

sample is taken forcibly and against the motorist's will. Nonetheless, the statutory scheme, as written, unequivocally demands that a motorist submit to warrantless blood testing. Upon the motorist's invocation of the statutory right of refusal, the Commonwealth will "suspend the operating privilege" of the motorist. 75 Pa.C.S. § 1547(b)(1). In other words, the statute unambiguously *conditions* the privilege of operating a motor vehicle upon the motorist's submission to warrantless blood testing.

of the Fifth Amendment's right against self-incrimination. *Neville* had no Fourth Amendment component. Accordingly, any comment in *Neville* regarding the validity of a warrantless blood test under the Fourth Amendment is *dictum*. Moreover, *Neville*'s commentary on this matter was premised upon the notion that "*Schmerber* . . . clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test." *Id.* at 559. As noted above, *McNeely* squarely rejected this categorical understanding of *Schmerber.* Accordingly, the Superior Court not only relied upon *dicta* for its essential legal conclusion, but outdated *dicta* that is irreconcilable with *McNeely* and *Birchfield*. Here, there was no search warrant, no demonstration of exigent circumstances, and no other valid exception to the warrant requirement. Accordingly, Bell had a constitutional right to refuse to consent to the unconstitutional search.

**II.      Penalization of the Exercise of a Constitutional Right**

Notwithstanding the fact that the blood test requested of Bell was unconstitutional, authorized by neither a search warrant nor a valid exception to the warrant requirement, was it permissible to introduce evidence of Bell's refusal at trial to prove his consciousness of guilt? To answer this question in the affirmative is to disregard the Supreme Court of the United States' repeated proclamations that a State may not penalize the exercise of individual constitutional rights.

"It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citing *Frost,* 271 U.S. 583). "'Constitutional rights would be of little value if they could be . . . indirectly denied' or 'manipulated out of existence.'" *Id.* (quoting *Smith v. Allwright*, 321 U.S. 649, 664 (1944), and *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960)). Thus, in *Griffin v. California*, 380 U.S. 609 (1965), the Court held that prosecutorial commentary and trial court instructions that raise an inference of guilt based

upon a defendant's exercise of his constitutional right not to testify violate the Fifth Amendment's right against self-incrimination. The *Griffin* Court reasoned that the use of a defendant's silence in this manner "is a penalty imposed by courts for exercising a constitutional privilege." *Id.* at 614. "It cuts down on the privilege by making its assertion costly." *Id.* The Court held that so burdening the exercise of a right is repugnant to the Constitution.

It is true that *Griffin*, like *Neville*, was a Fifth Amendment decision, not premised upon the Fourth Amendment. However, the Supreme Court has extended *Griffin*'s reasoning beyond the self-incrimination context to a wholly distinct constitutional right— the Sixth Amendment right to a jury trial. In *United States v. Jackson*, 390 U.S. 570 (1968), the Court addressed the constitutionality of a provision of the then-applicable Federal Kidnaping Act, which authorized the death penalty "if the verdict of the jury shall so recommend," but contained "no procedure for imposing the death penalty upon a defendant who waives the right to jury trial or upon one who pleads guilty." *Id.* at 571. The Court reasoned that the statutory language unconstitutionally disincentivized the defendant's exercise of the right to a jury trial:

> Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive.

*Id.* at 582. Citing *Griffin*, the *Jackson* Court held that, "[w]hatever the power of Congress to impose a death penalty for violation of the Federal Kidnaping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right." *Id.* at 583. Accordingly, the Court has not limited the rule of *Griffin* to the right against self-incrimination, but, rather, has signaled that *Griffin* embodies the

High Court's broad disapproval of State action that "impose[s] a penalty upon those who exercise a right guaranteed by the Constitution." *Harman*, 380 U.S. at 540.

Both this Court and our Superior Court, as well as numerous courts of our sister states, have applied similar reasoning in the Fourth Amendment context, and have held that the use of an individual's refusal to consent to a warrantless, unjustified search cannot be used as evidence of consciousness of guilt at trial. In *Commonwealth v. Welch*, 585 A.2d 517 (Pa. Super. 1991), our Superior Court held that trial testimony regarding a defendant's refusal to consent to a search of her bedroom unduly burdened her Fourth Amendment rights. The court reasoned:

> As we read the various comments made by the courts regarding the assertion of one's Fifth Amendment right, the overriding tone is that it is philosophically repugnant to the extension of constitutional rights that assertion of that right be somehow used against the individual asserting it. Although the cases have discussed the Fifth Amendment right we see no reason to treat one's assertion of a Fourth Amendment right any differently. It would seem just as illogical to extend protections against unreasonable searches and seizures, including the obtaining of a warrant prior to implementing a search, and to also recognize an individual's right to refuse a warrantless search, yet allow testimony regarding such an assertion of that right at trial in a manner suggesting that it is indicative of one's guilt.

*Id.* at 519.

This Court recently reached the same conclusion in *Commonwealth v. Chapman*, 136 A.3d 126 (Pa. 2016). In *Chapman*, a capital direct appeal, this Court addressed the defendant's claim that "his constitutionally protected refusal to voluntarily surrender a DNA sample to investigators was wrongfully used against him at trial." *Id.* at 129. We rejected the defendant's assertion that commentary upon his failure to consent to a search violated his Fifth Amendment right against self-incrimination, but noted that "the circumstances presented implicate a broader due process concern." *Id.* at 131.

"In this regard," we reasoned, "the admission of evidence of a refusal to consent to a warrantless search to demonstrate consciousness of guilt is problematic, as most jurisdictions hold (outside the context of implied-consent scenarios) that such admission unacceptably burdens an accused's right to refuse consent." *Id.* We noted that federal appellate courts unanimously accept this proposition, as do numerous state courts. *See id.* at 131 n.4 (citing, *inter alia*, *United States v. Runyan*, 290 F.3d 223, 249 (5th Cir. 2002) ("[T]he circuit courts that have directly addressed this question have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt."); *Bargas v. State,* 489 P.2d 130, 132 (Alaska 1971) ("It would make meaningless the constitutional protection against unreasonable searches and seizures if the exercise of that right were allowed to become a badge of guilt.")). We further noted, "[a]s an aside," that "such treatment contrasts with the response in scenarios in which a defendant resists providing a sample during the execution of a duly authorized search warrant." *Id.* (citing *United States v. Ashburn*, 76 F.Supp.3d 401, 444-46 (E.D.N.Y. 2014)).

Today's Majority declines to address the High Court's precedents regarding the penalization of the exercise of constitutional rights.[5] To justify this omission, the Majority

---

[5] The Majority's insistence to the contrary notwithstanding, I do not "criticize" the Majority for declining to address the unconstitutional conditions doctrine. Majority Opinion at 19 n.12. As I explained above, *supra* n.4, I have discussed that doctrine for the purpose of addressing the important threshold question of whether a warrantless blood test may be justified under any of the exceptions to the Fourth Amendment's warrant requirement—here, consent. The unconstitutional conditions doctrine is one among several reasons that construing "implied consent" as a categorical exception to the warrant requirement is a legal fiction that cannot withstand constitutional scrutiny. *See supra* Part I. The doctrine does not control the narrower derivative question before us, at least not directly.

By contrast, the decisions of The Supreme Court of the United States disfavoring penalization of constitutional rights are directly relevant to the precise issue presented here. In considering this issue, it is indeed incumbent upon this Court to consult the limits

states that Bell does not "cite to any of the High Court's cases discussing the penalization of constitutional rights, but instead cites solely to the distinguishable cases of *Chapman* and *Welch*." Majority Opinion at 19 n.12. As I discuss below, *Chapman* and *Welch* are not so easily distinguished in light of *McNeely* and *Birchfield*. Even more problematic, however, is the Majority's perspective with regard to the scope of this Court's ability to survey applicable and controlling law. Rather than testing its reasoning against the holdings of The Supreme Court of the United States, the Majority prefers to set a dangerous and unfounded precedent suggesting that the universe of applicable law is limited to the Table of Citations section of an appellant's brief.

Notably, the Majority recognizes that "[t]he United States Supreme Court's decisions in *McNeely* and *Birchfield* and this Court's decision in *Myers* indicate a warrantless blood test, which is conducted when no exceptions to the warrant requirement apply, violates the Fourth Amendment rights of a motorist suspected of DUI." Majority Opinion at 18. The Majority also stops short of stating that a statutory implied consent provision supplies such an exception to the warrant requirement. Faced thus with an individual's voluntary consent as the remaining potential justification for the failure to obtain a search warrant for a blood draw, the Majority declines to recognize the constitutional significance of the right *not* to consent, or the impermissibility of penalizing an individual for exercising that right.[6] Rather, the Majority avoids applying these principles to the question at bar entirely through resort to *dicta* and nonbinding authority.

that the High Court has set in this arena in cases such as *Griffin* and *Jackson*. It is not "spurious" to suggest that a court of last resort undertake such a review, Majority Opinion at 19 n.12, nor would the endeavor mean that we would "act as advocates." *Id*. at 20 n.12. Rather, addressing the High Court's precedents that bear upon the question before us is part of our duty as an appellate court to ensure conformity with governing law.

[6] The Majority offers only a conclusory citation to *Jenkins v. Anderson*, 447 U.S. 231 (1980), for the proposition that "the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of

The Majority places substantial weight upon our parenthetical caveat in *Chapman*, that "the admission of evidence of a refusal to consent to a warrantless search to demonstrate consciousness of guilt is problematic, as most jurisdictions hold (**outside**

constitutional rights.'" *Id.* at 236 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973)); *see* Majority Opinion at 18-19. The very next sentence in *Jenkins*, however, clarifies that the "threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." *Jenkins*, 447 U.S. at 236 (quoting *Chaffin*, 412 U.S. at 32). *Chaffin*, further, noted that the jury sentencing procedure at issue therein was "utilized for legitimate purposes and not as a means of punishing or penalizing the assertion of protected rights." *Chaffin*, 412 U.S. at 32 n.20. That is distinct, *Chaffin* reasoned, from a practice designed to discourage the exercise of constitutional rights. *Id.* ("[I]f the only objective of a state practice is to discourage the assertion of constitutional rights it is 'patently unconstitutional.'") (quoting *Shapiro v. Thompson*, 394 U.S. 618, 631 (1969)).

The sole purpose of the implied consent law's consequences of refusal is to induce a motorist's compliance with chemical testing. Where the motorist has a constitutional right to refuse to consent—as for a blood test, but not a breath test—the "only objective" of the evidentiary consequence at issue in this case is to "discourage the assertion" of that right. *Id.* In *Chaffin*'s parlance, such a practice is "patently unconstitutional." *Id.* The practice is designed to persuade motorists into relinquishing their Fourth Amendment rights through the promise of future punishment, so that evidence which otherwise requires a search warrant may be obtained in the absence of a warrant. This is a circumvention of the warrant requirement which, thus, "impairs to an appreciable extent . . . the policies behind" the Fourth Amendment. *Jenkins*, 447 U.S. at 236; *Chaffin*, 412 U.S. at 32. Accordingly, although the Majority is correct that not *every* choice in the criminal process that discourages the exercise of a right is unconstitutional, the choice compelled in this circumstance bears all of the hallmarks of an unconstitutional practice.

The Majority posits that the evidentiary consequence at issue "does not *solely* punish a defendant" but also has a legitimate purpose of allowing jurors to "understand why the State is not submitting an evidentiary test in a DUI prosecution." Majority Opinion at 19 n.11 (quoting *Rajda*, 196 A.3d at 1120) (emphasis added). Satisfaction of the potential curiosity of a hypothetical future juror is no justification whatsoever for demanding the relinquishment of a fundamental constitutional right. Moreover, no such confusion ever is necessary. Police officers simply can request breath tests—which remain categorically valid under *Birchfield* even absent a warrant—and/or they can obtain search warrants for blood tests. In either circumstance, if the motorist complies, the desired evidence is obtained and may be placed before the jury. If the motorist refuses, then refusal evidence constitutionally may be introduced, and no juror will wonder about its absence. There remains no satisfactory justification for compromising the Fourth Amendment simply to make available evidence *easier* to obtain.

**the context of implied-consent scenarios**) that such admission unacceptably burdens an accused's right to refuse consent." Majority Opinion at 18 (quoting *Chapman*, 136 A.3d at 131) (Majority's emphasis). Because *Chapman* involved no such "implied-consent scenario," this parenthetical was *dictum*, and, as such, has no precedential value. Even more importantly, the *Chapman dictum* pre-dates *Birchfield*. As discussed above, *Birchfield* necessarily has altered our understanding of the consequences that may attach under statutory implied consent schemes. Put simply, after *Birchfield*, there is no categorical exception to the warrant requirement for blood tests. Consequently, we must treat a request for consent to submit to a blood test no differently than a request for consent to search a bedroom, as in *Welch*, or a request for consent to a DNA test, as in *Chapman*. As with those other types of warrantless searches, admission into evidence of one's refusal to consent to a warrantless blood test to demonstrate consciousness of guilt is similarly "problematic." *Chapman*, 136 A.3d at 131. Stated otherwise, it is unconstitutional.

In addition to the *Chapman dictum*, the other central pillar of the Majority's analysis is the following passage from *Birchfield*:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

Majority Opinion at 21 (quoting *Birchfield*, 136 S.Ct. at 2185) (internal citations omitted). The Majority elevates this passage to the same level as the Court's holdings on the issue granted for review, reading the Court's reservation of these questions as approval of the practice of penalizing individuals for their refusal to consent to unconstitutional searches. *See id.* (reasoning that the *Birchfield* Court "did not back away from its prior approval of other kinds of consequences for refusal, such as 'evidentiary consequences'").

As I read *Birchfield*'s caveat, the Court merely declined to opine concerning matters outside the scope of the issue upon which *certiorari* was granted, which was limited to the constitutionality of criminal punishment for refusal to submit to warrantless BAC testing. To be sure, the Court's statement that its decision should not be "read to cast doubt on" such "civil penalties and evidentiary consequences" facially appears to exclude those consequences from the reach of the Court's holding. *Birchfield*, 136 S.Ct. at 2185. However, because the *Birchfield* Court resolved the question before it upon the basis of the *validity of the underlying search*, other constitutional doctrines discussed herein are implicated, and certain consequences of the Court's reasoning are inescapable.

Professor Wayne LaFave has addressed the incongruity that results from reading *Birchfield*'s caveat in the manner that the Majority does today:

> While it has been established as a Fifth Amendment matter that a defendant being prosecuted for driving under the influence may not object to the admission in evidence against him his refusal to submit to a sobriety test at the time of arrest, what of the claim that such evidence is inadmissible as a Fourth Amendment matter? The Court in *Birchfield* noted in passing (just as it did earlier in *McNeely*) that "evidence of the motorist's refusal is admitted as evidence of likely intoxication in a drunk-driving prosecution," and later cautioned that "nothing we say here should be read to cast doubt" on such "evidentiary consequences on motorists who refuse to comply." But that assertion is misleading at best, for *Birchfield*'s emphasis on the distinction between when a defendant's refusal to submit is constitutionally significant (*i.e.*, for a blood test absent exigent circumstances) and when it is not (*i.e.*, for all breath tests and for other blood tests) is, by well-established pre-existing authority, also relevant to the question of whether refusal may be admitted into evidence to show defendant's guilt. What the cases indicate is that when defendant's refusal was within the context of a recognized search-warrant-required category, then the Fourth Amendment prohibits admission of that refusal into evidence. . . . But on the other hand, when it is first determined that no warrant was required in any event (*e.g.*, taking a breath sample), comment on the refusal is permissible.

4 WAYNE R. LAFAVE & DAVID C. BAUM, SEARCH & SEIZURE § 8.2(l), at 27 (5th ed. Supp. 2018) (hereinafter, "LAFAVE") (footnotes and emphasis omitted).

Either the *Birchfield* Court simultaneously, and *sub silentio*, curtailed several distinct constitutional doctrines—including the principle that an individual may not be penalized for exercising a constitutional right, the bedrock rule that consent to a search may not be coerced, and the prohibition upon conditioning the exercise of a privilege upon the relinquishment of a constitutional right—or there is a simpler answer. I propose a rule that makes sense of *Birchfield* and does not run afoul of these other important constitutional principles. When it comes to blood testing, the rule is "simple—get a warrant." *Riley v. California*, 573 U.S. 373, 403 (2014). Once the officer has obtained a warrant for a blood test—and not a moment before—all of the penalties set forth in the implied consent law are available and constitutional.[7]

Perhaps the most conceptually challenging consequence of the *Birchfield* decision is recognizing that "implied consent" has nothing to do with consent in the Fourth Amendment sense, as it has been defined in *Schneckloth* and a legion of other decisions.[8]

---

[7] Although the consequence of driver's license suspension is not at issue herein, I note that Professor LaFave suggests that the "issue should be resolved in the same fashion" that the *Birchfield* Court resolved the issue of criminal penalties, reasoning:

> While the *Birchfield* Court stated only that the "limit to the consequences to which a motorist may be deemed to have consented by virtue of a decision to drive on public roads" is passed when "criminal penalties" of *any* magnitude are imposed, surely the driver who is thus constitutionally protected from a $10 criminal fine must likewise be protected from the more serious penalty of revocation of driving privileges.

LAFAVE, § 8.2(l), at 27 (emphasis in original). As with all of the other consequences set forth in the implied consent law, validation of this penalty is as simple as obtaining a search warrant for a blood test.

[8] Indeed, in one of the only mentions of "implied consent" in the High Court's recent plurality decision in *Mitchell v. Wisconsin*, the Court noted that its previous decisions "have not rested on the idea that these laws do what their popular name might seem to

BAC testing generally requires a motorist's cooperation, and implied consent laws are statutory schemes intended "to find a way of securing such cooperation." *Birchfield*, 136 S.Ct. at 2168. They do so by imposing consequences—or penalties—upon the failure to cooperate. *Id.* at 2166 ("These laws impose penalties on motorists who refuse to undergo testing.") But BAC tests are searches for purposes of the Fourth Amendment, and *Birchfield* requires that, in order to serve as a constitutional basis for the imposition of such consequences, those searches must "comport with the Fourth Amendment." *Id.* at 2172. Indeed, every time that the *Birchfield* Court spoke of "implied consent," it referred to these statutory *consequences* of refusal, not to an exception to the Fourth Amendment's warrant requirement. In this regard, statutory implied consent provisions should be regarded as mandates that a motorist cooperate with a *valid* search, not as mechanisms to allow circumvention of the requirements of the Fourth Amendment.

Importantly, where the Majority makes no attempt to recognize or resolve the manifest tension between its holding and the established constitutional doctrines that its holding compromises, my analysis of the question at bar not only is consistent with the reasoning of *Birchfield*, but provides a constitutionally permissible and jurisprudentially consistent path to the imposition of all of the consequences set forth in the implied consent law. Civil, criminal, and evidentiary consequences of refusal all *remain* constitutional. They have only one prerequisite—a valid search under the Fourth Amendment.

It is perhaps helpful to summarize the application of these principles in practice. Upon conducting a lawful arrest of a motorist suspected of DUI, a police officer may demand the motorist's submission to a breath test. As a valid search incident to arrest,

---

suggest—that is, create actual consent to all the searches they authorize." *Mitchell*, 139 S.Ct. at 2533 (plurality). Although the Court's plurality ruled upon a different basis and this statement accordingly is not controlling, it provides insight into the Court's rationale in *Birchfield*.

no search warrant is required. The police officer may warn the motorist that the failure to cooperate with the breath test will result in criminal punishment, civil penalties, and evidentiary consequences. If the motorist complies, then BAC evidence is obtained. If the motorist refuses, then the full complement of consequences set forth in the implied consent law may constitutionally be imposed.

If the police officer wishes to conduct a search of the motorist's blood, and the circumstances do not give rise to an exigency, then a search warrant is required. Under *McNeely*, there is no *per se* exigency. The search-incident-to-arrest doctrine is inapplicable pursuant to *Birchfield*. Threats of increased criminal penalties, the suspension of the motorist's driver's license, and the use of the motorist's refusal to consent as evidence of his guilt should all be regarded as coercive, and inconsistent with a conclusion "that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth*, 412 U.S. at 248. "For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Id.* at 228. At the very least, to ultimately impose any of these consequences, including the one at issue in the case at bar, is to penalize the exercise of a constitutional right. Such penalization is impermissible under the well-settled precedents of the Supreme Court of the United States. *See, e.g.*, *Harman*, 380 U.S. at 540; *Griffin*, 380 U.S. at 614.

However, once the police officer obtains a search warrant for a blood test (or establishes a true exigency), the search is valid, and the motorist has no right to refuse it. At that point, the blood test is equivalent to a breath test. If the motorist complies, the desired evidence is obtained. If the motorist refuses, then the full complement of consequences set forth in the implied consent law may constitutionally be imposed. The only distinction between these scenarios is that a blood test, but not a breath test, requires

compliance with the Fourth Amendment's warrant requirement. Such was the reason that the *Birchfield* Court drew a constitutionally significant distinction between the types of testing at issue.

Things play out very differently under the Majority's approach. Under today's holding, the police officer not only may demand the motorist's submission to a warrantless blood test—an unconstitutional search—but later may testify regarding the motorist's refusal to consent to that search, so as to suggest the motorist's guilt to a fact-finder. The result is nearly absurd. The police officer is not authorized to perform the search, and the motorist is therefore constitutionally entitled to refuse consent to that search. But the motorist, by doing what he *is* allowed to do, suffers adverse consequences for refusing to allow the police officer to do what the officer is *not* allowed to do.

To take one further step into the illogical, suppose that the motorist agrees to submit to a breath test, but not to a blood test. The motorist notes that, per the *Birchfield* decision, the breath test may be compelled, but an officer must get a search warrant for a blood test. By all appearances, the motorist is correct, inasmuch as excusing the warrant requirement for the blood test as well would defeat the purpose of the *Birchfield* Court's distinction between breath and blood. Well, replies the officer, although the motorist is correct with regard to the lawfulness of *criminal* penalties that later may attach to a conviction, and although the officer indeed would need to obtain a search warrant in order for that consequence to be permissible, the motorist nonetheless must "consent" to the warrantless blood search, or else face both a lengthy driver's license suspension and a prosecutor who will tell the judge or jury that the motorist was behaving as a guilty person would.

The Majority allows that the warrant requirement applies to blood tests, and that such a test, "which is conducted when no exceptions to the warrant requirement apply,

violates the Fourth Amendment rights of a motorist suspected of DUI." Majority Opinion at 18. Yet, the Majority contrarily holds that the blood test nonetheless *must be conducted even without a warrant*, lest the motorist face the penalty at issue in this case. This can be regarded as nothing other than an end-run around the warrant requirement—a means of permitting the impermissible under the dubious fiction of "consent," where such "consent" plainly is compelled by the threat of sanctions and thus is "no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Schneckloth*, 412 U.S. at 248. At no point does the Majority offer any reason as to why police officers cannot simply obtain search warrants for blood tests as a general matter.

With regard to a motorist's breath, the search-incident-to-arrest doctrine tethers the statutory implied consent consequences to a valid warrantless search. For a warrantless search of a motorist's blood, there is a missing link. To maintain the *Birchfield* Court's distinction between breath and blood, and to avoid compromising the bedrock constitutional doctrines discussed above, we must conclude that using a motorist's refusal to consent to a warrantless and otherwise-unjustified blood test as evidence of his consciousness of guilt unacceptably burdens the motorist's Fourth Amendment rights. Because there is no categorical basis for dispensing with the warrant requirement for blood tests, and because there is a concomitant constitutional right to refuse to consent to such a warrantless search, the introduction of a motorist's refusal to consent to a warrantless blood test as evidence of his guilt is "a penalty imposed by courts for exercising a constitutional privilege." *Griffin*, 380 U.S. at 614. "It cuts down on the privilege by making its assertion costly." *Id.* Because the "only objective" of this practice is to "discourage the assertion" of that constitutional right so as to avoid the warrant

requirement, it is "patently unconstitutional" as applied to warrantless blood testing. *Chaffin*, 412 U.S. at 32 n.20.

Moreover, because the search warrant process provides a simple, routine, and well-understood mechanism to validate a blood test, and therefore to establish a constitutional prerequisite to the imposition of penalties for refusal to comply, the admission of evidence of refusal to consent to a *warrantless* blood test not only penalizes the exercise of a constitutional right, but it does so "needlessly." *Jackson*, 390 U.S. at 583 ("Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right.").

Sometimes, Fourth Amendment decisions have difficult consequences, in that they can result in the unavailability of evidence necessary to prosecute a guilty person. This is not one of those cases. The evidence that the Commonwealth seeks remains available in every circumstance, either through a categorically valid warrantless breath test or by "seeking a warrant for a blood test when there is sufficient time to do so" or "relying on the exigent circumstances exception to the warrant requirement when there is not." *Birchfield*, 136 S.Ct. at 2184. We need not and should not strain the Fourth Amendment in order to find ways for the Commonwealth to obtain blood evidence without a search warrant. Rather, for blood tests, we should simply enforce the Fourth Amendment's warrant requirement.

**III.    Article I, Section 8 of the Pennsylvania Constitution**

For all of the foregoing, I have relied exclusively upon federal constitutional jurisprudence, which I believe clearly establishes Bell's entitlement to relief in this matter. However, as I noted at the outset, *Birchfield* and *McNeely* have left significant unanswered questions in their wake, questions that have placed the governing federal law "in a state of flux" for the past several years. *Pap's A.M. v. City of Erie*, 812 A.2d 591,

607 (Pa. 2002).  Under such circumstances, "this Court has not hesitated to render its independent judgment as a matter of distinct and enforceable Pennsylvania constitutional law."  *Id.*  If today's Majority is unwilling to take the short step necessary to fill in the gaps left by *Birchfield* as a matter of federal constitutional law, we should do so under our own Constitution.[9]

The Majority concludes that Bell's substantive claim under the Pennsylvania Constitution is waived because Bell failed to "develop an argument that the Pennsylvania Constitution provided any independent grounds for relief" in his pre-trial motion or in his motion for reconsideration.  Majority Opinion at 11.  A litigant who already has placed an issue before the trial court is not required to reassert that issue in a motion for reconsideration on pain of waiver.  The Majority cites no authority for such a conclusion. *Cf.* Pa.R.Crim.P. 720(B)(1)(c) ("Issues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues.").

As for the contents of Bell's pre-trial motion, the Majority cites to the inapposite case of *Commonwealth v. Chamberlain*, 30 A.3d 381 (Pa. 2011).  *Chamberlain*, however, did not involve a Pennsylvania constitutional claim that was *underdeveloped* below, but, rather, one that was *not raised at all* in the trial court.  *See Chamberlain*, 30 A.3d at 404-

---

[9]     As noted above, since this Court undertook consideration of this appeal, the Supreme Court of the United States decided *Mitchell v. Wisconsin*.  *See supra* n.1. Although the Court granted *certiorari* to decide "[w]hether a statute authorizing a blood draw from an unconscious motorist provides an exception to the Fourth Amendment warrant requirement," *Mitchell*, 139 S.Ct. at 2532, a plurality of the Court ultimately ruled upon the basis of the general applicability of the exigent circumstances exception where a motorist suspected of DUI is "unconscious and therefore cannot be given a breath test." *Id.* at 2531.  *Mitchell*, thus, does not offer any clarity as to the important questions left open in *Birchfield* with regard to the contours of "implied consent" or the validity of the consequences imposed under "implied consent" statutes.  Because the High Court again has left these important questions unresolved, the need for independent consideration under our own Constitution is all the more acute.

05 (noting Commonwealth's argument that claim was waived because "Appellant did not raise a state due process claim . . . before the trial court"). Because the claim in *Chamberlain* was raised for the first time on appeal, we naturally found it waived under Pa.R.A.P. 302(a). But Bell expressly raised an Article I, Section 8 claim before the trial court. *See* Motion to Dismiss, 3/8/2016, at 2 ("Pennsylvania's Implied Consent Law violates Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution under the Unconstitutional Conditions Doctrine."). As such, both Rule 302 and the reasoning of *Chamberlain* are inapplicable here.

All that remains, then, is the Majority's contention that Bell's claim was "general" and thus insufficient under *Commonwealth v. Lagenella*, 83 A.3d 94, 99 n.3 (Pa. 2013), *Commonwealth v. Galvin*, 985 A.2d 783, 793 n.15 (Pa. 2009), and *Commonwealth v. Starr*, 664 A.2d 1326, 1334 n.6 (Pa. 1995). *See* Majority Opinion at 11-12 n.8. The referenced footnotes contained in *Laganella*, *Galvin*, and *Starr*, however, all merely note that the respective appellants did not advance the argument in their briefs to *this Court*, such that this Court would not embark upon an independent analysis of the Pennsylvania Constitution *sua sponte*, and instead would deem the applicable constitutional provisions to be coterminous for purposes of the decision. Neither *Laganella*, *Galvin*, nor *Starr* found waiver under Rule 302 for the appellants' failure to "develop" a Pennsylvania constitutional claim before the lower court, as the Majority does today.[10]

Bell raised his claim before the trial court under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. He was the appellee in the Superior Court,

---

[10] To the extent that the Majority's opinion may be read to suggest that such "development" necessitates that a challenger present to the trial court an analysis under *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991)—the form of development that this Court prefers—I emphasize that we never have required such on pain of waiver. *See, e.g.*, *Commonwealth v. Arroyo*, 723 A.2d 162, 166 n.6 (Pa. 1999) (failure to engage in an *Edmunds* analysis in lower court "does not result in waiver of a state constitutional claim").

and thus bore no issue-preservation burden. Bell's Article I, Section 8 claim was included expressly within our grant of *allocatur*.[11] Bell develops his claim further before this Court, and engages in an *Edmunds* analysis. Under such circumstances, a retrospective finding of waiver based upon the absence of preferred language in a pre-trial motion is exceedingly harsh, and leaves future litigants with little guidance regarding the steps that they must take in the trial court so that this Court will *not* deem their claims waived.

I would hold simply that blood tests require compliance with the warrant requirement under Article I, Section 8 of the Pennsylvania Constitution. Resolution of the remaining questions left open in *Birchfield* then falls into place.

I respectfully dissent.

Justice Donohue joins this dissenting opinion.

---

[11]    We granted allowance of appeal in order to consider:

Whether § 1547(e) of the Vehicle Code, 75 Pa.C.S. § 1547(e), is violative of *Article 1 Section 8 of the Pennsylvania Constitution* and the Fourth Amendment to the United States Constitution to the extent that it permits evidence of an arrestee's refusal to submit a sample of blood for testing without a search warrant as proof of consciousness of guilt at the arrestee's trial on a charge of DUI?

*Commonwealth v. Bell*, 183 A.3d 978 (Pa. 2018) (*per curiam*) (emphasis added).